IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-00111-03-CR-W-BP |
| SHERON LAMONT MANNING, (03), | |
| Defendant. | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and William A. Alford III, Assistant United States Attorney, and the defendant, Sheron Lamont Manning ("the defendant"), represented by F.A. White, Jr.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Counts One, Nine, ~~and Ten~~ of the Superseding Indictment. Count One charges him with a violation of 18 U.S.C. §§ 933(a)(1), (3), and (b), that is, conspiracy to traffic firearms. Defendant further agrees to and hereby does plead guilty to Count Nine charging him with a violation of 18

U.S.C. §§ 933(a)(1) and (b), that is, illegally trafficking a firearm that had been converted into a machinegun.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty and relevant conduct are as follows:

Count One

Between approximately May 24, 2022, and April 20, 2023, the defendant and the co-defendants identified in the Indictment and Superseding Indictment, conspired, and agreed with each other to transfer firearms to other persons. Members of the conspiracy distributed at least 22 firearms to third parties. Specifically, the firearms that law enforcement officials know were distributed by members of the conspiracy include the following firearms:

- A Glock, Model 19, 9mm caliber, handgun, bearing Serial Number BKHR170;

- A Glock, Model 17, 9mm caliber, handgun, bearing Serial Number AARD738;

- A Glock, Model 23, .40 caliber, handgun, bearing Serial Number BUGF363;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22022202;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22022226;

- A Romar/Cugir, Mini Draco, 7.62 x 39 caliber, pistol, bearing Serial Number ROA 22 PG-3659;

- A Century Arms, Model "VSKA," 7.62 x 39 caliber, pistol, bearing Serial Number SV7P008760;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22022225;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22022215;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22021785;

2

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 21412257;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22094913;

- A Glock, Model 22, Model 22, .40 caliber, pistol, bearing Serial Number XCD938;

- A Glock, Model 19, 9mm caliber, pistol, bearing Serial Number BHCR180;

- A Glock, Model 41, .45 caliber, pistol, bearing Serial Number YWE140;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing an obliterated Serial Number;

- An Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22108192;

- A Glock, Model 22, .40 caliber, pistol, bearing Serial Number BWTM124;

- A Glock, Model 23, .40 caliber, pistol, bearing Serial Number ZLZ965;

- A Glock, Model 19, 9mm caliber, pistol, bearing Serial Number BKPX144;

- A Glock, Model 17, 9mm caliber, pistol, bearing Serial Number BKUB535; and

- A Glock, Model 22, .40 caliber, pistol, bearing Serial Number MYR680.

Count Nine

On November 18, 2022, a Confidential Informant ("CI") of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) went to the residence located at 1325 Emanuel Cleaver II, Blvd, Kansas City, Jackson County, Missouri, within the Western District of Missouri. The CI purchased a Glock machinegun from Sheron Manning for $1,200. There is a video and audio recording of this transaction. Sheron Manning is the brother of co-defendant Antonio Manning who had previously illegally trafficked several firearms to a CI. The CI exchanged text messages and recorded phone calls with Sheron Manning regarding the purchase of a fully automatic pistol. During the transaction, Sheron Manning stated he could get the CI more fully automatic firearms.

During this meeting, Sheron Manning sold the CI a Glock, Model 41, .45 caliber, pistol, bearing Serial Number YWE140 that had been converted into a machinegun. An ATF firearms expert has confirmed that the Glock, Model 41 qualified as a machinegun as it had been altered to fire automatically instead of semi-automatically. Sheron Manning did not have any firearms registered in the National Firearms Registration and Transfer Record. Accordingly, this machinegun was not registered in accordance with federal law. Sheron

3

Manning knew that it was illegal to sell a machine gun to the CI at the time of the transaction as the CI was prohibited from possessing an unregistered machine gun.

Relevant Conduct

January 3, 2023 Controlled Purchase

On January 3, 2023, the CI went to the residence at 1325 Emanuel Cleaver II, Blvd, Kansas City, Jackson County, Missouri, and purchase an Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing an obliterated Serial Number from Sheron Manning for $1,100. The CI exchanged text messages with Sheron Manning regarding the purchase of a fully automatic handgun. During the transaction, Sheron Manning stated he would check and see if they had any more fully automatic firearms. The CI also asked Sheron Manning if he had a crew that was willing to rob a drug house for 8-10 kilograms of powder cocaine. Sheron Manning stated he would ask around. This transaction was both video and audio recorded.

Sheron Manning sold the CI an Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing an obliterated Serial Number, that had been altered into a machinegun. An ATF firearms expert has confirmed that the Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing an obliterated Serial Number qualified as a machinegun as it had been altered to fire automatically instead of semi-automatically. Sheron Manning did not have any firearms registered in the National Firearms Registration and Transfer Record. Accordingly, this machinegun was not registered in accordance with federal law. Sheron Manning knew that it was illegal to sell a machine gun to the CI at the time of the transaction as the CI was prohibited from possessing an unregistered machine gun.

April 6, 2023 Controlled Purchase

On April 6, 2023, the CI went to the residence located at 1325 Emanuel Cleaver II, Blvd, Kansas City, Jackson County, Missouri. The CI purchased a rifle purported to be fully automatic from Sheron Manning for $1,200. There is a video and audio recording of this transaction. The CI exchanged text messages with Sheron Manning regarding the purchase of a fully automatic rifle. During the transaction, Sheron Manning stated the rifle was fully automatic. The CI told Sheron Manning he/she was a convicted felon. Sheron Manning told the CI he should be able to get more guns, but his people really don't want to sell their guns outside of the group due to some things going on in the city. The CI had a text message conversation with Sheron Manning following the firearm purchase in which the CI questioned Sheron Manning about the firearm being fully automatic like one of the previous rifles that we purchased. The CI texted Sheron Manning "Bro why this mini don't have the fully auto piece in it like the other one did." Sheron Manning responded, "That's the drop in trigger, that's one so U don't gotta put the piece in." Sheron Manning added "Go test it if u need to."

4

Specifically, Sheron Manning sold the CI an Anderson Manufacturing, Model AM-15, AR-15 style, multi-caliber, pistol, bearing Serial Number 22108192. An ATF firearms expert inspected the firearm and opines that it is not a machinegun as that term is defined by federal law. Sheron Manning, however, knew that the CI was a felon and prohibited from possessing a firearm yet transferred a firearm to the CI anyway.

April 10, 2023

On April 10, 2023, the CI went to the residence located at 1325 Emanuel Cleaver II, Blvd, Kansas City, Jackson County, Missouri, to purchase a Glock machinegun from Sheron Manning for $1,300. The CI exchanged text messages with Sheron Manning regarding the purchase of a fully automatic handgun. Sheron Manning sold the CI a Glock, Model 22, .40 caliber pistol, bearing Serial Number BWTM124, that had been altered into a machinegun. There is a video and audio recording of this transaction.

An ATF firearms expert has confirmed that the Glock, Model 22, .40 caliber pistol, bearing Serial Number BWTM124, qualified as a machinegun as it had been altered to fire automatically instead of semi-automatically. Sheron Manning did not have any firearms registered in the National Firearms Registration and Transfer Record. Accordingly, this machinegun was not registered in accordance with federal law. Moreover, Sheron Manning knew it would be illegal to transfer an unregistered machinegun to a third party and it would be a felony for that third party to possess an unregistered machinegun. Sheron Manning, also knew that the CI was a felon and prohibited from possessing a firearm.

April 17, 2020

On April 17, 2023, the CI went to the residence at 1325 Emanuel Cleaver II, Blvd, Kansas City, Jackson County, Missouri to purchase machineguns. The CI purchased a Glock machinegun from Sheron Manning for $1,300, specifically a Glock, Model 23, .40 caliber, pistol, bearing Serial Number ZLZ965, that had been altered into a machinegun. There is a video and audio recording of this transaction. The CI also purchased a Glock machinegun from co-defendant Dejohuan Huntley, for $1,300, specifically a Glock, Model 19, 9mm caliber, pistol, bearing Serial Number BKPX144. Prior to the purchase, the CI exchanged text messages with Sheron Manning regarding the purchase of a fully automatic handgun.

During the transaction, Huntley and the CI had a conversation about the future purchase of fully automatic handguns. Huntley explained to the CI that their Glock switches were better than the 3-D printed ones. Huntley stated that he puts switches on all of his guns. Huntley asked for the CI's phone number which he/she gave. Huntley asked Sheron Manning if it was ok for him to get the CI's number. The CI told Huntley and Sheron Manning that he/she is a convicted felon. Huntley replied "so am I."

An ATF firearms expert has confirmed that both the Glock, Model 23, .40 caliber, pistol, bearing Serial Number ZLZ965 and the Glock, Model 19, 9mm caliber, pistol,

5

bearing Serial Number BKPX144, each qualified as a machinegun as they had been altered to fire automatically instead of semi-automatically. Neither Sheron Manning nor Huntley had any firearms registered in the National Firearms Registration and Transfer Record. Accordingly, these machineguns were not registered in accordance with federal law. Moreover, Sheron Manning and Huntley both knew it would be illegal to transfer an unregistered machinegun to a third party and it would be a felony for that third party to possess an unregistered machinegun. Also, both Sheron Manning and Huntley knew that the CI was a felon and prohibited from possessing a firearm.

Huntley has previously been convicted of an aggravated assault that carried a term of imprisonment in excess of one year of imprisonment. Huntley was sentenced to serve more than a year of imprisonment, so he knew of his prior felony conviction which he acknowledged to the CI during the aforementioned controlled purchase of the firearm.

An ATF interstate nexus expert has inspected the aforementioned firearms and confirmed both were manufactured outside of the State of Missouri and accordingly were transported in interstate commerce as they necessarily crossed state lines.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

**5. Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One charging him with a violation of 18 U.S.C. §§ 933(a)(1), (3), and (b), that is, conspiracy to traffic firearms, the maximum penalty the Court may impose is not more than fifteen (15) years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution and a $100

6

mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant understands that upon his plea of guilty to Count Nine charging him with a violation of 18 U.S.C. §§ 933(a)(1) and (b), that is, illegally trafficking a firearm that had been converted into a machinegun, the maximum penalty the Court may impose is not more than fifteen (15) years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

> a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";
>
> b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;
>
> c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;
>
> d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;
>
> e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

7

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

j. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from May 24, 2022, to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets. The defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

k. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

l. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility.

m. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

8

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the defendant's illegal trafficking and possession of firearms for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Two, and Eleven through Seventeen at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the

offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

b. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

c. The parties do not have any other Guidelines computation agreements relating to the applicable base offense level, offense level enhancements, or offense level reductions. The parties reserve their rights to advocate for or object to any Guidelines computations in this case.

d. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

e. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

f. The United States agrees not to seek an upward variance or an upward departure from the Guidelines range deemed applicable by the Court. The defendant may seek a downward variance or a downward departure from the Guidelines range deemed applicable by the Court. This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

g. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The

defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

      h. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

      a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

      b. comment on the evidence supporting the charges in the Indictment and Superseding Indictment;

      c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

  d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14.**  **<u>Waiver of Constitutional Rights.</u>** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

  a. the right to plead not guilty and to persist in a plea of not guilty;

  b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

  c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against him;

  e. the right to compel or subpoena witnesses to appear on his behalf; and

  f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15.**  **<u>Waiver of Appellate and Post-Conviction Rights.</u>**

  a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally

attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

      b.    The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16.**    **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

      a.    The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

      b.    The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

      c.    The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

      d.    Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

      e.    At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning

the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims

15

under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20.** **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his

attorneys or any other party to induce him to enter his plea of guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**23. Government Will Move to Remand Defendant Into Custody At The Plea.** The defendant understands that at the time the Court accepts his pleas of guilty, the Government will move to detain him. This motion will be made because the defendant has had multiple violations while on conditions of bond, the serious nature of the offenses in this case, and the fact that the defendant will no longer be presumed innocent once the Court accepts his guilty pleas.

The defendant reserves his rights to argue for that he should remain on conditions of bond after the Court has accepted his pleas of guilty.

Teresa A. Moore
United States Attorney

Dated: 1/23/25

William A. Alford III
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment and the superseding indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 1/23/25

Sheron Lamont Manning
Defendant

I am Sheron Lamont Manning's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment and the Superseding Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Sheron Lamont Manning's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 1/23/25

F.A. White, Jr.
Attorney for Defendant